**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

DAVID WALDMAN,

                                    Defendant.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___ 6/12/2018 ___

18-MJ-4701 (SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge**:

On June 1, 2018, Defendant David Waldman was arrested and charged with one count of cyberstalking under 18 U.S.C. § 2261A(2)(B) and two counts of transmitting interstate threats under 18 U.S.C. § 875(c). During Waldman's initial appearance on June 1, 2018, the Government sought pretrial detention, arguing that Waldman is a danger to the alleged victim and others and that no condition or combination of conditions will reasonably assure the safety of the victim or the community under 18 U.S.C. § 3142(e). The Court made a preliminary ruling that Waldman should be detained and ordered the parties to submit briefing on the matter. After carefully considering the parties' briefs, the Government's motion for pretrial detention is GRANTED.

## BACKGROUND

The complaint alleges that Waldman "engaged in a long-term and pervasive campaign of harassment, intimidation, and threats directed at an individual (the 'Victim') who dated [him] for approximately four months in 2013 and 2014." Compl. ¶ 3. From 2014 to 2018, Waldman purportedly "sent hundreds of email and text message communications to the Victim, and created 'blogspot' pages, of which the Victim was the subject." Id. (footnote omitted). In these

communications and blog posts, Waldman allegedly "complained about the breakup, described the various psychiatric medications he was taking, threatened to (and later did) contact the Victim's parents and employer, demanded that the Victim have sex with him, and threatened various acts of violence on the Victim." Id. For example, according to the complaint, on April 8, 2014, Waldman sent the victim an email stating:

> I am not playing around anymore. . . . what i won't deal with, and will not accept, is you out of my life . . . . not sure how much more of this i can take before i go haywire and bananas and show up at your apartment in the middle of the night or at your new job if you have one. trust me - i will do it. ill [sic] give you another week or so of this shit. then my limit will be reached. . . . we can do it the easy way, or the hard way but the end result will be the same . . . . you will be back in my life. . . . women like you come around once, twice. maybe three times in a lifetime. that means you are rare. and valuable. and something to be kept and cherished. and cherished can mean held hostage and bound and gagged inside my apartment. you will be well fed and cared for, i assure you, but do you really think you will have fun? . . . begin preparing for the inevitability now . . . or take the easy route . . . just get in touch with me. like i said, i have about another week left in me. after that, its [sic] bound and gagged time.

Id. ¶ 5(b). On April 10, 2014, Waldman allegedly sent the victim another email, which stated, "I cannot believe you changed your locks and are frightened of me and felt you had to hide from me . . . . I would never want to cause you harm . . . . [W]hat was it about me that made you afraid that I would hurt you?" Id. ¶ 5(h). On April 21, 2014, shortly after the victim contacted the New York Police Department to complain about Waldman's messages, Waldman purportedly sent the victim an email stating, "Cops are as worthless as you. . . . Give it up you worthless disgusting skank. You will not surivive [sic] this. I swear it." Id. ¶ 5(i); Pl.'s Letter 2.

After the victim received many messages like these, on April 30, 2014, the Manhattan District Attorney's Office charged Waldman with aggravated harassment in the second degree. Compl. ¶ 6(a). Shortly thereafter, the Criminal Court of the City of New York issued an order of protection, which prohibited Waldman from contacting the victim through any means, including through email or social media. Id. On July 15, 2014, that court entered an adjournment in

contemplation of dismissal and entered a one-year temporary order of protection against Waldman. Id. ¶ 6(b). The protective order prohibited Waldman from stalking, harassing, or contacting the victim through any means, including through electronic means, and directed Waldman not to have "any contact with the above person(s) through any third parties." Id.

Despite these orders, the Government alleges that Waldman continued to send inflammatory and threatening emails to the victim and created threatening posts on blogs that appeared to be directed toward the victim. Id. ¶¶ 7–9. The complaint suggests that Waldman sought to cover his tracks by using pseudonyms and different email addresses. The Government's special agent attests that Waldman sent harassing emails to the victim using the pseudonym "Robert Roma" and the email account robertroma68@gmail.com, and that Waldman published posts on a blog called "nycitysux.blogspot.com" using the pseudonym "Anton Phillipe Wolfgang Van Sertima." Id. ¶¶ 7–8. For example, on June 6, 2014, Waldman allegedly published a blog post on nycitysux.blogspot.com, which stated, "To ensure my Constitutional Rights are never again violated, and to protect my life against [the victim] . . . who threatened my life, I will soon be applying to the State of New York for a handgun permit." Id. ¶ 8(b). Similarly, on July 20, 2014, Waldman purportedly posted:

> i dig on vendettas and dig on revenge. . . . i will ruin you. i will fuck up your shit to the point that your life will be unrecognizable. you must have seen some inklings of what i might be capable of during our three months together. . . . [W]hen i am wronged, i stop giving a shit about the consequences. i stop feeling fear or trepidation. i only feel what I need . . . revenge. to see suffering. . . . i dont [sic] like wanting you dead. but i do and it is deserved. . . . in addition to the tears i made you cry, in addition to the breakdowns i caused . . . i have only begun. . . .  i am going to change your life for the worse. and I am going to enjoy it. . . . I may end up going down with you, but make no mistake, your [sic] a doomed cunt.

Id. ¶ 8(c). On July 23, 2014, Waldman appears to have sent the victim a lengthy email using the pseudonym Robert Roma. Id. ¶ 7. In addition to calling the victim a "mental patient" and a "sociopath," the email apparently stated that "the law should never be invited into personal shit.

never. nothing good would ever come of it. you must know that." <u>Id.</u> The email also stated, "ive [sic] already forgiven that dick detective." <u>Id.</u>

On December 9, 2014, the Manhattan District Attorney's Office charged Waldman with misdemeanor criminal contempt in the second degree (for violating the temporary order of protection) and stalking in the fourth degree. <u>Id.</u> ¶ 10. The Government's special agent attests that Waldman subsequently pleaded guilty to the contempt charge, and the court entered a new order of protection against Waldman that remains in effect until December 11, 2019. <u>Id.</u>

The Government alleges that even after this second order of protection was entered, Waldman continued to publish harassing blog posts targeting the victim and appears to have sent additional emails threatening the victim. <u>Id.</u> ¶¶ 11–13. The evidence in the record suggests that over the months and years that followed, Waldman found increasingly sophisticated means of disguising his identity. <u>Id.</u> According to the Government's special agent, the victim received numerous harassing and threatening emails from accounts believed to be owned by Waldman and hosted by overseas email providers that assure anonymity for senders. <u>Id.</u>; <u>see also</u> Pl.'s Letter 5. For example, on February 26, 2017, the victim received an email from anonymous@hoi-polloi.org, which stated, "[I] think chicks that play the victim card should die. [I] think women who accuse men of abuse should be tortured. [Y]ou should have a butcher knife fuck your pussy. . . . [Y]ou and your jew family should die." Compl. ¶ 12(a).

On June 1, 2018, the Government charged Waldman with one count of cyberstalking under 18 U.S.C. § 2261A(2)(B) and two counts of transmitting interstate threats under 18 U.S.C. § 875(c). <u>Id.</u> ¶¶ 1–2.

**DISCUSSION**

Under the Bail Reform Act of 1984, a judicial officer may order the pretrial detention of a person charged with an offense only if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). This determination involves two sequential steps. First, the judicial officer must assess whether the case involves (a) "a crime of violence" or other enumerated offense, (b) "a serious risk that such person will flee," or (c) "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." Id. § 3142(f). If one of these criteria is met, then second, the judicial officer must determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. § 3142(g). In making this assessment, the judicial officer must consider "(1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id. § 3142(g). "The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." Id. § 3142(f).

I.      **Threatening, Injuring, or Intimidating a Prospective Witness**

Based on the evidence in the complaint, it appears that Waldman has repeatedly threatened and intimidated the victim for over four years. The Government has also produced evidence suggesting that multiple court orders prohibiting Waldman from having any contact with the victim have been ineffectual in dissuading him from threatening and intimidating the

victim. The Government's special agent attests that Waldman found increasingly creative ways to mask his identity, including publishing blog posts using pseudonyms and sending emails through anonymous email services. The many threats Waldman appears to have made toward the victim over a prolonged period of time, his apparent defiance of prior court orders, and his alleged attempts to conceal his identity from authorities all demonstrate that there is a "serious risk" that Waldman will "attempt to threaten, injure, or intimidate" the victim (a prospective witness) if he is released from detention pending trial. 18 U.S.C. § 3142(f)(2)(B). Such threats and intimidation may discourage the victim from assisting the prosecution and testifying at trial.

## II.     Conditions of Release

Having found that Waldman is eligible for detention under Section 3142(f), the Court considers the factors articulated in Section 3142(g) to assess whether there is any combination of conditions of release that will assure the safety of the victim and the community. First, although the Court declines to determine whether the offenses of cyberstalking and interstate threats constitute "crimes of violence" under the Bail Reform Act, the nature and circumstances of the offenses charged in the complaint weigh in favor of detention. See 18 U.S.C. § 3142(g)(1). According to the complaint, Waldman threatened to bind and gag the victim and threatened to "fuck up [her] shit to the point that [her] life [would] be unrecognizable." Compl. ¶¶ 5(b), 8(c). In addition, messages that appear to be from Waldman stated that the victim should be raped with a butcher knife and should be killed. Id. ¶ 12(a). The record suggests that Waldman sent many threatening emails and published numerous intimidating blog posts, even after courts repeatedly ordered him to refrain from communicating with the victim in any way. These alleged offenses are serious and suggest that the Court should exercise caution in determining whether to release Waldman from detention pending trial.

Second, the weight of the evidence against Waldman is considerable. According to the special agent's sworn statements, the Government has collected dozens of examples of blog posts, email messages, and text messages containing serious threats directed toward the victim. In the earlier communications discussed in the complaint, Waldman appears to have used his own name, his own cellphone, and his own email accounts when contacting the victim. Compl. ¶ 5. The Government has also supplied evidence suggesting that later communications and blog posts can be traced back to Waldman and his IP address. Compl. ¶¶ 14–23. Although the Government has not yet conclusively determined that all of the messages and posts were tied to Waldman, the content and style of the messages constitute clear and convincing evidence that the same author—Waldman—was responsible for all of the communications.

Third, Waldman's history and characteristics weigh in favor of detention. Most notably, evidence in the record suggests that Waldman harassed, intimidated, and threatened the victim over a period of more than four years. Though the Government does not allege that Waldman has ever acted on his threats, his long history of harassing and intimidating conduct, in contravention of prior court orders, strongly suggests that Waldman will continue engaging in threatening and intimidating behavior if released. In addition, according to the complaint, Waldman has threatened to commit suicide and has referenced abusing Klonopin, which may indicate that he is prone to self-harm. Id. ¶¶ 5(f), 7.

Fourth, releasing Waldman pending trial would pose serious danger to the emotional wellbeing and physical safety of the victim. Waldman contends that the following conditions of release would assure the safety of the victim and the community: execution of a bond cosigned by his mother and brother; home detention in his mother's house in the Middle District of Pennsylvania; electronic monitoring; a ban on internet use; and mental health treatment. But the

evidence in the record suggests that Waldman has a long history of finding innovative ways to contravene court orders. After multiple orders of protection prohibited Waldman from contacting the victim through any means, Waldman appears to have disguised his identity and sent anonymous communications that continued to threaten and intimidate the victim. Thus, even if the Court orders Waldman to be confined in his mother's home in Pennsylvania and bans Waldman from using the internet, it seems that Waldman is likely to disregard the Court's prohibition on internet use, find new methods of surreptitiously accessing the internet, and send further threatening and intimidating communications to the victim. Any such communications are likely to cause the victim additional emotional distress and may discourage her from participating fully in the investigation and prosecution of this case.

Moreover, when federal agents arrested Waldman at his apartment and searched the premises pursuant to a warrant, they found a large knife in his bedroom (either a pocket knife or a switchblade), a large hunting knife in his kitchen, a lock-picking kit, and several diaries that purportedly include instructions on concealing IP addresses and posting blogs that are not traceable. Pl.'s Letter 5–6; Def.'s Letter 5. Although these objects might be completely benign in other contexts, they certainly raise red flags in this case, where Waldman allegedly threatened to rape the victim with a butcher knife, made specific references to the victim's decision to change her locks, and found ways to disguise his identity and send anonymous communications. The fact that Waldman possessed materials that were directly tied to the specific threats he allegedly made toward the victim suggests that he may have been planning to act on his threats.

Out-of-state home detention and electronic monitoring are likely to discourage Waldman from acting on any such plans, but these conditions cannot reasonably assure that Waldman will refrain from physically harming the victim. Especially in light of the evidence that Waldman has

disregarded court orders in the past, the Court is concerned that Waldman may leave his mother's home in Pennsylvania (even in the face of home detention and electronic monitoring) and may attempt to travel to New York to physically harm the victim. Waldman's alleged efforts to conceal his identity suggest a capacity to evade law enforcement despite the placement of a GPS bracelet. Moreover, in light of Waldman's alleged history of engaging in increasingly threatening and aggressive behavior after interacting with law enforcement and the courts, there appears to be a risk that Waldman may take rash and dangerous actions toward the victim upon release from pretrial detention. Based upon the clear and convincing evidence in the record, the Court finds that no condition or combination of conditions of release will be effective in preventing Waldman from threatening, injuring, or intimidating the victim.

## CONCLUSION

There is a serious risk that Waldman will attempt to threaten, injure, or intimidate the alleged victim if he is released from detention pending trial. Moreover, the Court finds that no condition or combination of conditions of release will reasonably assure the safety of the victim and the community if Waldman is released. Accordingly, the Government's motion to detain Waldman prior to trial is GRANTED.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      June 12, 2018
            New York, New York